IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEANNINE PRESLEY, INDIVIDUALLY AND
AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF GEORGE PRESLEY, DECEASED,
AND SHELTER INSURANCE COMPANY AS
SUBROGEE OF JEANNINE PRESLEY AND
GEORGE PRESLEY                                                    PLAINTIFFS


                v.         Civil No. 06-5160


LAKEWOOD ENGINEERING AND
MANUFACTURING COMPANY                                             DEFENDANT


**O R D E R**

Now on this 4th day of December, 2007, the above referenced matter comes on for this Court's consideration.  A hearing was held before this Court on October 10 and 11, 2007, and based upon the arguments of counsel, the pleadings submitted in this case, and all other matters of relevance, the Court, finds and orders as follows:

**INTRODUCTION**

1.   This matter arises out of a fire at the residence of George and Jeannine Presley which occurred on January 30, 2004. The plaintiffs allege that an oil-filled heater manufactured by defendant Lakewood Engineering and Manufacturing Company ("Lakewood") was the cause of the subject fire.  The plaintiffs' complaint includes claims for personal injury and property damage on theories of negligence, strict liability, and breach of

warranty.

2. As stated above, a hearing was held on October 10 and 11, 2007. The hearing was scheduled to consider the **Defendant's Motion to Preclude the Expert Testimony of Martin Gallaher and Raymond Arms** (document #24) and to consider the **Defendant's Motion for Summary Judgment** (document #26). However, at the commencement of the hearing, the Court also considered **Plaintiffs' Motion for Reconsideration of the Court's Order Granting Defendant's Motion to Strike Plaintiffs Untimely Rebuttal Reports and Supplemental Discovery Responses and Brief in Support Thereof** (document #52) which was filed one day before the hearing on October 9, 2007.

**FACTS**

3. From the pleadings of the parties, statements of counsel, and the witness testimony and other evidence presented to the Court, the following facts appear:

* On January 30, 2004 a fire occurred at the Presley residence.

* Plaintiffs allege that a defective condition in a Lakewood space heater was the cause of the fire.

* Mr. Presley died on June 22, 2005 of causes unrelated to the fire.

* Prior to the fire, Mr. Presley used a Lakewood space heater in the evenings while he watched television in the den/TV

room of the residence.

* According to Mrs. Presley, it was Mr. Presley's habit to turn the heater off each night when he was done watching television.

* Mrs. Presley testified that Mr. Presley never failed to turn the heater off before going to bed.

* After the fire, Mr. Presley never told Mrs. Presley that he forgot to turn off the heater the night before the fire.

* Mrs. Presley never heard Mr. Presley say to anyone else that he forgot to turn off the heater the night before the fire.

* The Fayetteville Fire Department, under the direction of Fire Marshall Kyle Curry, investigated the fire scene and evidence and listed the cause of the fire as "undetermined."

* Fire Marshall Curry did not uncover any evidence to support a claim that Mr. Presley forgot to turn the heater off before going to bed on the night before the fire.

* Fire Marshall Curry did not find any physical evidence to indicate that just prior to the fire the heater was on.

* The plaintiffs named both Martin Gallaher and Raymond Arms as experts for their case.

* Martin Gallaher testified that he has no opinion regarding how the Lakewood heater "might have failed" or "caused the fire."

* Gallaher also testified that he will defer to Raymond

Arms regarding any physical evidence that exists that would indicate whether the heater was on at the time of the fire.

* Gallaher sent a letter to plaintiffs' attorney dated June 20, 2005. In this letter, Gallaher claims he interviewed Mr. Presley on February 6, 2004 at the fire scene, and that Mr. Presley stated: "it is possible he left the space heater "ON" when he left the room . . . to go to bed" the night before the fire.

* Gallaher failed to document his alleged February 6, 2004 interview with Mr. Presley in writing, by tape-recorder, or by videotape, and he failed to obtain a signed statement from Mr. Presley documenting these alleged statements.

* On January 30, 2004, Mr. Presley was admitted for treatment at Washington Regional Medical Center in Fayetteville, Arkansas.

* Mr. Presley was an in-patient at Washington Regional Medical Center from the date of his admission, January 30, 2004, until the date of his discharge, February 15, 2004.

* Mr. Presley was re-intubated on medical ventilation while being treated at Washington Regional Medical Center on February 2, 2004.

* Mr. Presley was not extubated from medical ventilation until February 5, 2004.

* Mr. Presley was not present at the scene of the subject fire on either February 5 or 6, 2004.

*   Mr. Presley did not meet with Gallaher on either February 5 or 6, 2004.

*   Plaintiffs retained electrical engineer Raymond Arms "to determine the specific cause for this loss." Arms described his occupation as "I do failure analysis, forensic engineering."

*   Prior to working on this case, Arms has never used or owned an oil-filled heater. Prior to working on this case, Arms never investigated a fire where a suspected cause was an oil-filled electric heater. This case is the first time Arms ever examined or investigated an oil-filled heater.

*   In this case, Arms had three exemplar Lakewood heaters available for testing. However, Arms did not do any testing "to establish the validity of the proposed ignition scenario." To Arms' knowledge, no one on behalf of the plaintiffs did any testing to prove his ignition scenario.

*   No one in this case performed testing to determine whether an improperly crimped connection may cause an ignition of combustibles.

*   Arms was not aware of any scientific research or studies that prove or show that ignition may occur from an improperly crimped connection.

*   Arms' theories and findings concerning the cause of the fire have not been peer reviewed. Further, Arms admitted that he does not know of "any resource we can go to that would indicate a

-5-

known error rate for the type of analysis" he conducted in this case.

* No one in this case has conducted an ignition or flame test on the power cords, metallic connectors, or switch box within the unit to determine fire spread.

* Arms did not perform any experiments or testing to determine whether or how a fire could have spread from the heater to other combustibles in the Presley residence.  Further, Arms is not aware of any scientific studies or research to support the claim that a fire from the heater could have spread to other combustibles in the Presley residence.

* Fire Marshall Curry found the heater plugged into an extension cord which also had a cordless phone, floor lamp and hand-held massager plugged into it.  Although both the cordless phone and hand-held massager could be competent ignition sources, Arms never examined the cordless phone or the hand-held massager.

* There were a number of extension cords found in the area of origin.  Arms could not rule out the extension cords as a possible cause of the fire.

* In order for Arms' theory of ignition to have occurred, the heater would have had to be switched to the "on" position.

* Arms uncovered no physical evidence indicating that the heater was switched to the "on" position before or at the time of the fire.

\*	Arms received an email from the Presleys' insurance representative, Nancy Combs, which reported an interview of the Presleys by Combs. Combs indicated that Mr. Presley "always turns [the heater] off when he goes to bed."

### PLAINTIFFS' MOTION FOR RECONSIDERATION

4.  As mentioned above the Court first considered **Plaintiffs' Motion for Reconsideration of the Court's Order Granting Defendant's Motion to Strike Plaintiffs Untimely Rebuttal Reports and Supplemental Discovery Responses and Brief in Support Thereof** (document #52) which was filed one day before the hearing on October 9, 2007. Upon due consideration, for the reasons stated, the Court, although granting the motion in that it reconsidered the previous ruling on the defendant's motion to strike, found that the Court's previous ruling should stand.

### DEFENDANT'S MOTION TO PRECLUDE EXPERT TESTIMONY

5.  Next, the Court, considered **Defendant's Motion to Preclude the Expert Testimony of Martin Gallaher and Raymond Arms** (document #24). In the defendant's motion, it argues that the expert opinions of Martin Gallaher and Raymond Arms are not admissible under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

6.  The admissibility of expert testimony "'lie[s] within the broad discretion of the trial court' and will not be reversed on appeal unless there has been an abuse of that discretion."

Jenkins v. Arkansas Power & Light Co., 140 F.3d 1161, 1165 (8th Cir. 1998)(quoting Peitzmeier v. Hennessy, 97 F.3d 293, 296 (8th Cir. 1996)).  Under Rule 702 of the Federal Rules of Evidence, the opinion of a qualified expert witness is admissible if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.

> To evaluate an expert's theory against these requirements, courts are to consider factors such as: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community.

Pro Service Automotive, L.L.C. v. Lenan Corp., 469 F.3d 1210, 1215 (8th Cir. 2006)(citing Smith v. Cangieter, 462 F.3d 920, 923 (8th Cir. 2006); Daubert, 509 U.S. at 592-94).

    7.  With respect to Martin Gallaher, the evidence shows that although Gallaher offers testimony concerning the general origin of the fire in the Presley home, Gallaher has stated no independent opinions concerning the cause of the subject fire or fire spread following ignition.  The Court therefore finds that with respect to Gallaher, the defendant's motion should be granted in part, and denied in part.  Specifically, the Court finds that the motion is granted with respect to fire cause and spread, and

Gallaher's opinion testimony thereto is precluded.  However, with respect to fire origin, the motion is denied.

8.   The Court now turns to the expert testimony of Raymond Arms.  With respect to Arms, the defendant argues that the opinion testimony offered with respect to fire causation is not founded on appropriate scientific methodology, is unreliable, and should be excluded.  The Court agrees.

Similar to the facts of <u>Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.</u>, 394 F.3d 1054 (8th Cir. 2005), Arms purported to follow the guidelines and standards established by the National Fire Protection Association publication NFPA 921.  However, although "NFPA 921 requires that hypotheses of fire origin must be carefully examined against empirical data obtained from fire scene analysis and appropriate testing", Arms "did not apply this standard reliably to the facts of the case." <u>Fireman's Fund</u>, 394 F.3d at 1057-58.  Arms did not perform testing to prove his ignition scenario; and, this Court is troubled by Arms' testimony that such testing would be impossible. Additionally, Arms failed to effectively point to any scientific studies or research to support his ignition scenario.  Finally, this Court finds that Arms' failed to exclude the other possible ignition sources present at the fire origin including extension cords, a cordless phone, floor lamp, and hand-help massager.

For all of these reasons, the defendant's motion to preclude

the expert testimony of Raymond Arms is granted.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

9.   Finally, the Court considered the **Defendant's Motion for Summary Judgment** (document #26).  The standard to be applied to a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure and provides for the entry of summary judgment on a claim

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

F.R.Civ.P. 56©; see also Carroll v. Pfeffer, 262 F.3d 847 (8th Cir. 2001); Barge v. Anheuser-Busch, Inc., 87 F.3d 256 (8th Cir. 1996). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party.  Anderson v.  Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Accordingly, all evidence must be viewed in the light "most favorable to the non-moving party." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997); see also Bailey v. United States Postal Service, 208 F.3d 652, 654 (8th Cir. 2000).

Where a movant makes and properly supports a motion for summary judgment, the opposing party may not rest upon the allegations or denials of its pleadings; rather, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 256.  The non-moving

party must "make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." Wilson v. Southwestern Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995).

In this case, the defendant argues that summary judgment should be granted in its favor for two reasons: first, because the plaintiffs cannot prove the Lakewood heater was switched "on" at the time of the fire; and, second, because absent admissible expert testimony on fire causation, the plaintiffs cannot prove the necessary element of causation.  The Court finds that summary judgment should be granted for both reasons.

10.  The Court agrees that the plaintiffs cannot prove that the Lakewood heater was switched "on" at the time of the fire.  It is undisputed that, for the plaintiffs' theory of causation to be accepted, it must be proven that the Lakewood heater was switched "on" at the time of the fire.  And, the *only* evidence the plaintiffs have presented to support the theory that the Lakewood heater was "on" at the time of the fire is a letter from Martin Gallaher in which he stated that during a February 6, 2004 meeting with Mr. Presley at the fire scene Mr. Presley stated that "it is possible he left the space heater "ON" when he left the room . . . to go to bed" the night before the fire.  That meeting was totally undocumented by Mr. Gallaher and has been discredited by other statements given by the Presleys during the fire

-11-

investigation and by the fact that Mr. Presley was a patient at Washington Regional Medical Center on February 6, 2004 and was not discharged until February 15, 2004. The Court therefore finds that the plaintiffs have failed to present reliable evidence to support their contention that the Lakewood heater was switched "on" at the time of the fire.

11. The Court also agrees that without admissible expert testimony as to fire causation, the plaintiffs cannot prove the necessary element of fire causation. As stated above, the Court has excluded the testimony of Raymond Arms concerning fire causation. In this case, the plaintiffs have set forth claims for strict liability, negligence, and breach of warranty. Under each of these theories, proof of causation is required. *See* <u>Pilcher v. Suttle Equipment Co.</u>, 223 S.W.3d 789 (2006); <u>Coca-Cola Bottling Co. of Memphis, Tennessee v. Gill</u>, 100 S.W.3d 715 (2003); and <u>Lakeview Country Club v. Superior Prod., et al.</u>, 926 S.W.2d 428 (1996). Without the proposed expert testimony concerning fire causation, the plaintiffs cannot support their claims against the defendant.

12. Accordingly, summary judgment is appropriate and is granted in favor of the defendant.

**CONCLUSION**

IT IS, THEREFORE, ORDERED that:

\*     the **Plaintiffs' Motion for Reconsideration of the**

**Court's Order Granting Defendant's Motion to Strike Plaintiffs Untimely Rebuttal Reports and Supplemental Discovery Responses and Brief in Support Thereof** (document #52) is **GRANTED** in that the Court reconsidered its previous ruling on the defendant's motion to strike.  However, the Court finds that its previous ruling should stand.

\*	the **Defendant's Motion to Preclude the Expert Testimony of Martin Gallaher and Raymond Arms** (document #24) is **GRANTED IN PART AND DENIED IN PART**.  With respect to the expert testimony of **Martin Gallaher**, the motion is granted to the extent that any testimony regarding fire causation and fire spread is precluded; the motion is denied with respect to any testimony by Martin Gallaher regarding fire origin.  With respect to the expert testimony of **Raymond Arms**, the motion is granted.  And,

\*	the **Defendant's Motion for Summary Judgment** (document #26) is **GRANTED.**

IT IS SO ORDERED.

/S/JIMM LARRY HENDREN  
JIMM LARRY HENDREN  
UNITED STATES DISTRICT JUDGE